## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK CHAMBERLAIN,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 20-CV-6572** |
| | : | |
| **THE CITY OF PHILADELPHIA,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**SCHMEHL, J. /s/ JLS**                                                    **APRIL 10, 2023**

Plaintiff Mark Chamberlain filed this civil rights action in which he primarily alleges that his constitutional rights were violated in the course of his arrest and prosecution.  He also alleges that the conditions in which he was held in the Philadelphia Prison System violated his constitutional rights.  This case was previously stayed pending the resolution of Chamberlain's federal criminal proceeding.  Chamberlain has filed a request to lift the stay.  (ECF No. 18). Chamberlain's request to lift the stay will be granted.[1]  For the following reasons, the Court will sever Chamberlain's claims based on prison conditions into a new case, dismiss most of his remaining claims with prejudice, and allow his malicious prosecution claim to proceed to service.

## I.      FACTUAL ALLEGATIONS[2]

---

[1] By Order dated September 3, 2021, the Court previously granted Chamberlain leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  (ECF No. 9.)  At that time, the Court acknowledged that the Complaint was subject to statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B).

[2] The following facts are taken from the Complaint and public records, which the Court may consider in evaluating Chamberlain's claims.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

The Complaint names the following Defendants: (1) the City of Philadelphia; (2) Inspector Raymond Evers; (3) Chief Inspector Anthony Boyle; (4) Police Officer Timothy Bogan; (5) Police Officer Tyra Deveaux; (6) Police Officer Jeffery Galazka; (7) Police Officer Richard Woertz; (8) Sgt. Patrick Love; (9) "D.A. Rep." Jason Morgan; (10) Joseph L. Coleman Esq.; (11) the Honorable Robert P. Coleman; (12) the Honorable Charles Ehrlich; (13) A.D.A. Greg Mazmanian; (14) Mayor Jim Kenney; (15) Commissioner Blanche Carney; and (16) the Philadelphia Prison System. (Compl. at 2.)[3] The Defendants are sued in their individual and official capacities except for Judges Coleman and Ehrlich, A.D.A. Mazmanian, and Mayor Kenney, who are sued only in their official capacities. (*Id.* at 3-8.)

On April 22, 2019, officers of the Philadelphia Police Department's Narcotic Field Unit, led by Officer Timothy Bogan and supervised by Sargent Patrick Love, kicked down the door to Chamberlain's home at 2139 Anchor Street in Philadelphia. (*Id.* at 13.) Chamberlain alleges that the officers "did not possess an arrest warrant nor a search warrant for [him], his home nor specific items of property" (*id.*), but also appears to allege that they possessed a warrant, authorized by Judge Ehrlich, and that the warrant suffered from deficiencies and/or was "forged" or "fake." (*Id.* at 15, 26.) According to Chamberlain, the officers who entered his home were looking for a suspect based on a "vague description of a 'B/M target wearing all Black,'" who was allegedly followed to Chamberlain's home four days earlier after a controlled buy that was orchestrated using information obtained from a confidential informant in the area.[4] (*Id.* at 13.)

_____

[3] The Court adopts the pagination supplied by the CM/ECF docketing system.

[4] Chamberlain alleges that in 2017, Chief Inspector Boyle, who oversaw the Narcotics Bureau, and Inspector Evers held a meeting, in which they announced a policy to the effect that the Narcotic Bureau's staff could "flip suspects into off-the-books confidential informants." (Compl. at 11.) Officers allegedly used these off-the-books informants to conduct controlled

Chamberlain alleges that Defendant Galazka falsely claimed that he knocked on the door and announced the presence of police prior to entry, and also claimed that he heard someone in the home running away from the door, causing Defendant Love to order Defendant Woertz to breach the door.  (*Id.* at 13, 23-24.)  Chamberlain alleges that as a result of the broken door, his spouse and five children were "without security" for two days until the door, lock, and frame could be replaced.  (*Id.* at 23.)  He also claims that Officer Galazka arrested him solely because he was the only Black male present in the home.  (*Id.* at 13.)

Chamberlain was thereafter charged in Philadelphia Municipal Court with drug and firearm-related crimes.  *See Chambers v. Bogan*, Civ. A. No. 19-4131 (E.D. Pa.) (ECF No. 10 at 2) (Memorandum adopting and approving Report and Recommendation that petition for writ of *habeas corpus* be denied (citing *Commonwealth v. Chambers*, MC-51-CR-10635-2019 (M.C. Philadelphia))).[5]  Chamberlain alleges these were "false charges" orchestrated by Defendants Bogan and Deveaux based on a "false narrative of events allegedly taking place prior to the illegally [sic] intrusion/illegal arrest."  (Compl. at 15.)  He also claims that Defendant Morgan of the District Attorney's Office swore to the allegations in the criminal complaint as if he had "personal knowledge, as a participant, in the investigations of the Phila. police" and even though the facts alleged in the criminal complaint were allegedly based on false evidence and/or evidence that did not implicate Chamberlain.  (*Id.* at 25-26.)

---

buys of drugs, which led to a custom of falsifying paperwork and hiding information from prosecutors, as Chamberlain alleges occurred in his case.  (*Id.* at 11-12.)  This policy was allegedly in effect for three years until Boyle was terminated in 2020.  (*Id.* at 12.)  Chamberlain adds that there have been federal indictments and "a multitude of substantiated complaints" against many of the officers "involved in the narcotics squads" but that these officers are nevertheless permitted to partake in narcotics investigations.  (*Id.* at 13.)

[5] Chamberlain is also known as Mark Chambers.

Chamberlain contends that the City of Philadelphia intentionally delayed his case by holding him for over eight hours before his arraignment and failing to provide a preliminary hearing until June 24, 2019, approximately sixty days after his preliminary arraignment. (*Id.* at 15.) Chamberlain also contends that the City of Philadelphia has a custom of "not allowing Defendants to come down to the courthouse" for formal arraignments and most pretrial conferences or hearings unless the Defendant is "taking a 'deal,'" which allegedly leads to delays and permits the Commonwealth "to make false claims." (*Id.* at 16.)

Defendant Attorney Coleman was appointed by the court to represent Chamberlain at his preliminary hearing. (*Id.*) Chamberlain claims that, at the hearing, he was "subjected to an illegal/unconstitutional identification procedure."[6] (*Id.* at 15.) In a conversation with Coleman on September 5, 2019, Chamberlain learned that the docket incorrectly indicated that discovery had been exchanged and informed Coleman that he was going to petition the court to represent himself. (*Id.* at 15-16.) Judge Robert Coleman, who was at that time assigned to the matter, allegedly failed to rule on this motion and other motions Chamberlain filed and continued the case for a period of time until the matter was ultimately reassigned to Judge Ehrlich. (*Id.* at 16-17.) Chamberlain also attributes the failure of the state court to rule on his motions to his court-appointed counsel. (*Id.* at 17.)

On January 3, 2020, Chamberlain was permitted to proceed *pro se* in his criminal case. (*Id.* at 17.) He received discovery on January 21, 2020 and noticed that the discovery was prepared between the time he was permitted to proceed *pro se* and the date it was disclosed to

---

[6] It is unclear what Chamberlain means by the term "identification procedure." At times he appears to use this term to refer to the fact of his arrest (Compl. at 15) and at other times the term appears to refer to various Defendant police officers' identification of Chambers in court during testimony at hearings in the course of the prosecution. (*Id.* at 24-25.)

him.  (*Id.*)  According to Chamberlain, the discovery confirmed that he had been maliciously prosecuted because lab reports related to the two drug sales that allegedly occurred in April were done in January of 2020, meaning that the lab reports were not completed at the time he was arrested and charged.  (*Id.*)  Chamberlain also observed typographical errors as well as other errors and alleged inadequacies on property receipts he received in the course of discovery.  (*Id.* at 17, 19.)  He claims that these property receipts, which were prepared by Defendant Officer Deveaux, were fabricated, and revealed the illegality of the search of his home and his related arrest.  (*Id.* at 19-22.)  By reviewing the discovery, Chamberlain also learned that the one property receipt entered into evidence at his preliminary hearing was a property receipt for a blue packet of alleged heroin from another suspect's case, and that no property receipts of any firearms had been entered into evidence at the preliminary hearing even though he received two property receipts for firearms from the date of the arrest.  (*Id.* at 20.)  He also alleges that none of the discovery showed that he was a suspect in the investigation.  (*Id.* at 21-22.)  Chamberlain claims that he notified the court and the District Attorney's Office about these issues, so they were "fully aware" of them "if not since 2019, [then] surely 2020, February 21-26," when Chamberlain made similar arguments in motions he filed in his criminal case.  (*Id.* at 29.)

Suppression hearings were held on August 26, 2020, and September 14, 2020 before Judge Ehrlich.  Chamberlain appears to be alleging that Defendant Bogan testified at that hearing in a manner inconsistent with the relevant procedural rules and that Judge Ehrlich also ignored the procedural rules and violated Chamberlain's rights.[7]  (*Id.* at 14.)  He asserts that Judge

---

[7] Throughout his Complaint, Chamberlain accuses various Defendants of failing to follow the Pennsylvania Rules of Criminal Procedure.  However, violations of state law, assuming any such violations occurred here, rarely amount to constitutional violations.  *See Whittaker v. Cnty. of Lawrence*, 437 F. App'x 105, 109 (3d Cir. 2011) ("[A] state official's failure to follow state law does not, by itself, shock the conscience [in violation of the constitution] in the absence of

Ehrlich made additional errors, including by revoking his bail "when his speedy trial rights were being violated," subjecting him to "illegal rulings," "taking the position of the District Attorney," and interfering with testimony during court hearings.  (*Id.* at 26-27.)  Chamberlain also alleges that the revocation of his bail was "strategically put in place by A.D.A. Greg Mazmanian," allegedly to keep Chamberlain "from speaking out to the public about the facts of his case."  (*Id.* at 35.)

According to Chamberlain, his criminal case "should have been dismissed at the closure of the last hearing on Sept 14, 2020 but instead the Commonwealth has chosen to not allow the Hon. Ehrlich to rule on the Motion to Suppress, by inticing [sic] a frivolous federal indictment after 19 months of pre-trial incarceration and the showing of falsehood and a fraud upon the court."  (*Id.* at 27; *see also id.* at 36 ("The Honorable Ehrlich has a misconception, that because [Chamberlain] has a pending federal indictment . . . he is not obligated to rule on a already held and [accrued] (during pre-trial hearing on Aug 26, and Sept, 14, 2020) Motion to Suppress.").)  Indeed, public dockets reflect that Chamberlain was federally indicted on October 15, 2020 on two counts of possession of a firearm occurring on April 22, 2019, in violation of federal law.  *See United States v. Chamberlain*, Crim. A. No. 20-362 (E.D. Pa.) (ECF No. 1).  Chamberlain contends that Judge Ehrlich is delaying ruling on the pending motion to suppress "using the unduly excuse of the federal indictment and COVID-19."  (Compl. at 27.)  He also accuses Assistant District Attorney Mazmanian of ignoring the rules of professional conduct and

additional facts."); *Maple Properties, Inc. v. Twp. of Upper Providence*, 151 F. App'x 174, 179 (3d Cir. 2005) (explaining that "'[a] violation of state law is not a denial of due process of law.'" (quoting *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 468-69 (7th Cir. 1988))).  Accordingly, if Chamberlain is attempting to state an independent claim based on any Defendant's failures to follow state law, those claims are dismissed.

violating his constitutional rights by refusing to dismiss the charges, thereby "misusing one jurisdiction on the count of another (federal illegal indictment pending)." (*Id.* at 30.)

Chamberlain also alleges that the conditions in which he was held within the Philadelphia Prison System during his pretrial detention violated his constitutional rights. Among other things, he alleges that the City failed in its response to the COVID-19 pandemic by failing to release non-violent inmates such as himself, locking inmates in their cells "for days at a time," preventing inmates from going to court, denying law library access, making inmates use sheets as masks, preventing family visits and instead requiring inmates to pay for video visits, and housing inmates who tested positive for the virus in a population with inmates who had not tested positive. (*Id.* at 31.) Chamberlain alleges that he suffered from "allergy/flu like symptoms" on March 16, 2020, the day before the City shut down due to COVID, for which he sought and received medical attention. (*Id.* at 32.) Despite the pandemic, "no staff or inmate was mandated to wear any P.P.E. gear" and no such gear was available for inmates or staff until April or May. (*Id.*) Chamberlain also claims the City mishandled the manner in which it quarantined inmates. (*Id.* at 32-33.) He attributes the City's handling of these matters to Commissioner Carney, who was "following orders" from Mayor Kenney. (*Id.* at 33.)

Chamberlain asserts Fourth Amendment claims based on allegedly unlawful searches and seizures as well as his arrest, detention, and prosecution. (*Id.* at 4, 40.) He also asserts other constitutional claims based on how his state criminal proceeding was handled, including with regard to delays and revocation of his bail, as well as constitutional claims based on the conditions in which he was confined within the Philadelphia Prison System. (*Id.* at 4, 7.) In addition to pursuing his constitutional claims pursuant to 42 U.S.C. § 1983, Chamberlain brings claims under 42 U.S.C. § 1985(3) and § 1986. (*Id.* at 41.) He seeks an injunction directing his

"immediate release . . . from any federal or state detention or charges" and dismissal of those charges.  (Compl. at 41; *id.* at 27 (alleging that there exists "clear reason to dismiss the charges and release [Chamberlain] from custody"); *id.* at 30 (seeking an injunction ordering Chamberlain's "immediate release and dismissal of the frivolous federal indictment/vindictive federal indictment").)  He also seeks millions of dollars in damages.  (*Id.* at 40-41.)

## II.   REQUEST TO LIFT THE STAY

By Order dated September 13, 2022 (ECF No. 16), the Court previously stayed this matter pending the outcome of Chamberlain's federal criminal case before the Honorable Mitchell S. Goldberg, United State District Judge for the Eastern District of Pennsylvania.  In his federal criminal case, charging Chamberlain with firearms offenses, counsel moved to suppress the firearms evidence obtained from the search of his home on April 22, 2019, as well as statements made by Chamberlain.  *See United States v. Chamberlain*, Crim. A. No. 20-362, Motion to Suppress Physical Evidence and Statements, (ECF No. 19).  After conducting a hearing and receiving testimony from Chamberlain and Officer Jeffrey Galazka, Judge Goldberg denied Chamberlain's motion to suppress, concluding that "the search warrant and, in turn, the subsequent search and arrest were substantiated by probable cause."  *United States v. Chamberlain*, No. 20-362, 2022 WL 425889, at *12 (E.D. Pa. Feb. 11, 2022).  Chamberlain proceeded to trial on May 24, 2022, but that trial resulted in a hung jury.  *See United States v. Chamberlain*, Crim. A. No. 20-362, Government's Guilty Plea Memorandum, (ECF No. 101 at 1).  On November 29, 2022 Chamberlain pled guilty to the firearms possession charges and was sentenced to a term of 54 months imprisonment on February 21, 2023.  *See id.*, Guilty Plea Agreement (ECF No. 103) & Judgment (ECF No. 109).  In light of the entry of judgment in Chamberlain's federal criminal proceedings, the Court will grant Chamberlain's request to lift

the stay of this matter previously entered on September 13, 2022 and proceed to screen Chamberlain's Complaint in accordance with § 1915.  (ECF No. 16.)

## III.    STANDARD OF REVIEW

Having previously granted Chamberlain leave to proceed *in forma pauperis*, (ECF No. 9), 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) require the Court to dismiss the Complaint if it is frivolous or fails to state a claim.  A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Chamberlain is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## IV.    DISCUSSION

### A.    Severance

Chamberlain's claims about the conditions in which he was confined within the Philadelphia Prison System must be severed from his claims challenging his arrest and prosecution. Federal Rule of Civil Procedure 18(a) states that "[a] party asserting a claim, . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Federal Rule of Civil Procedure 20 allows a plaintiff to join multiple defendants in one action if: (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action." "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

"But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit." *McKinney v. Prosecutor's Office*, No. 13-2553, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014) (internal quotations omitted). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). To remedy a misjoinder, a Court may add or drop a party or sever any claims. Fed. R. Civ. P. 21. "A district court has broad discretion in deciding whether to sever a party pursuant to Federal Rule of Civil Procedure 21." *Boyer v. Johnson Matthey, Inc.*, No. 02-8382, 2004 WL 835082, at *1 (E.D. Pa. Apr. 16, 2004).

Chamberlain's Complaint is based on two distinct sets of events. The first set of events pertains to the search of his home, his arrest, and his prosecution on charges in state (and federal)

court following his arrest.  The second set of events upon which Chamberlain bases his claims concerns the conditions in which he was confined within the Philadelphia Prison System during the COVID-19 pandemic.  These two groups of claims are not sufficiently related factually and legally to justify joinder.  *See Roudabush v. United States*, No. 11-980, 2011 WL 13225005, at *6 (D.N.J. July 14, 2011) ("Here, the claims arising out of the state court trial appear to be completely unrelated, factually and legally, from the claims arising out of conditions at the jail."); *see also Thompson v. Ferguson*, 849 F. App'x 33, 36 (3d Cir. 2021) (*per curiam*) ("Misjoinder of claims occurs when, among other things, the events that give rise to the plaintiff's claims do not stem from the same transaction.").  Accordingly, the Court will sever Chamberlain's claims based on prison conditions into a separate lawsuit naming as Defendants the City of Philadelphia, Mayor Jim Kenney, Commissioner Blanche Carney, and the Philadelphia Prison System.[8]  Defendants Mayor Jim Kenney, Commissioner Blanche Carney, and the Philadelphia Prison System will be terminated from the docket in the instant civil action because Chamberlain's claims based on his arrest, detention and prosecution do not pertain to these Defendants.

### B.      Requests for Release and Dismissal of Charges

To the extent Chamberlain seeks an injunction directing his immediate release from custody and/or dismissal of the charges on which has been convicted by way of his guilty plea because of alleged constitutional violations, the claim is dismissed.  Claims seeking dismissal of federal criminal charges are not cognizable in a civil rights action because a federal defendant's

---

[8] Should Chamberlain seek to proceed with these claims in the new action, he will be obligated to either pay the fees for proceeding or file a new motion to proceed *in forma pauperis* with an updated, certified copy of his prisoner account statement, as he did for the instant matter.  The Court expresses no opinion on the merits of any such claims.

request for dismissal of the indictment against him must be pursued in his federal criminal case. *See Reese v. Warden Philadelphia FDC*, 904 F.3d 244, 247 (3d Cir. 2018) ("[I]nsofar as Reese sought to challenge the charges against him or the conduct of law-enforcement officers during arrest or interrogation, he was required to do so through pretrial motions in his criminal case . . . ."); *Datts v. McCormick*, No. 10-220, 2011 WL 1326818, at *1 (S.D. Ga. Mar. 7, 2011), *report and recommendation adopted,* No. 10-220, 2011 WL 1279175 (S.D. Ga. Apr. 5, 2011) (civil rights claims were not cognizable where plaintiff "want[ed] the federal indictment dismissed, which would result in freedom from confinement on the federal gun charge").  Accordingly, to the extent Chamberlain seeks his release and dismissal of any charges against him, the claim is not plausible.

### C.    Claims For Money Damages under §§ 1985(3) and 1986

Chamberlain asserts claims for money damages under §§ 1985(3) and 1986.   These claims are not plausible.  "[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States."  *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997); *Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct").  "[Section] 1986 constitutes an additional safeguard for those rights protected under 42 U.S.C. § 1985, and 'transgressions of § 1986 by definition depend on a preexisting violation of § 1985."  *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994) (quoting *Rogin v.*

*Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980)).  Thus, "to maintain a cause of action under §

1986, the plaintiffs must show the existence of a § 1985 conspiracy." *Id.* at 1295 n.5.

"[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from

which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox*

*Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).  "[A] bare assertion of conspiracy will not

suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "'A conspiracy cannot be found

from allegations of judicial error, ex parte communications (the manner of occurrence and

substance of which are not alleged) or adverse rulings absent specific facts demonstrating an

agreement to commit the alleged improper actions.'" *Capogrosso v. The Supreme Court of New*

*Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) (*per curiam*) (quoting *Crabtree v. Muchmore*, 904 F.2d

1475, 1480-81 (10th Cir. 1990)).

Chamberlain has failed to allege facts supporting a plausible inference that the

Defendants conspired against him due to his race or membership in any other class.  Rather, he

alleges a conspiracy among police officers, prosecutors, and judges, in conclusory terms only

apparently based solely on the way his case progressed.  (*See* Compl. at 41.)  Conclusory

allegations are insufficient to make a conspiracy claim plausible.  *Twombly*, 550 U.S. at 556.

Additionally, the Complaint fails to meaningfully connect any alleged conspiracy to

Chamberlain's race or membership in another protected class.  Accordingly, Chamberlain has

failed to state a plausible claim under 1985(3).  *McArdle v. Hufnagel*, 588 F. App'x 118, 121 (3d

Cir. 2014) ("While McArdle's Brief mentions race and national origin, his statements concerning

a conspiracy are conclusions without supporting facts.  This fails to state a claim for relief under

42 U.S.C. § 1985(3).").  It follows that he has also failed to state a § 1986 claim.  Accordingly, these claims will be dismissed.

### D.      Section 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  States themselves are not considered "persons" who may be liable under § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989).

### 1.      Judges Coleman and Ehrlich

 Judges Coleman and Ehrlich are sued in their official capacities only based on alleged deficiencies in the way those judges handled Chamberlain's criminal prosecution, including issues related to bail, delay, and fairness.  (*See* Compl. at 6, 36.)  The claims against Judges Coleman and Ehrlich in their official capacity are essentially claims against the state courts that employ them, which are part of Pennsylvania's unified judicial system.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (explaining that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").

The Eleventh Amendment bars suits against a state and its agencies in federal court when the state has not waived that immunity, *id.*, and the Commonwealth of Pennsylvania has not waived that immunity for civil rights claims.  *See* 42 Pa. Cons. Stat. § 8521(b).  The Eleventh Amendment similarly precludes damages claims against Commonwealth employees in their official capacities, because such claims are in essence claims against the Commonwealth.  *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official

capacity."); *Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 944, 948 (3d Cir. 2019) (*per curiam*)

("The District Court properly concluded that Kokinda's claimed violations of §§ 1983, 1985(3),

and 1986 against the DOC and the individual prison staff members sued in their official

capacities are barred by the Eleventh Amendment."); *Collins v. Sload*, 212 F. App'x 136, 140 n.5

(3d Cir. 2007) (*per curiam*) ("We also agree with the District Court that Eleventh Amendment

immunity provided the defendants a similar shield against the claims for damages against them

in their official capacities under §§ 1983, 1985, & 1986.").

　　　　Pennsylvania's courts are arms of the Commonwealth that share in the Commonwealth's

Eleventh Amendment immunity, and, as such, are not considered "persons" subject to liability

under § 1983.  *See Karns v. Shanahan*, 879 F.3d 504, 519 (3d Cir. 2018) (noting that "'[s]tates or

governmental entities that are considered "arms of the State" for Eleventh Amendment purposes'

are not 'persons' under § 1983") (quoting *Will*, 491 U.S. at 70)); *Benn v. First Judicial Dist. of

Pa.*, 426 F.3d 233, 241 (3d Cir. 2005) (holding that Pennsylvania's Judicial Districts are entitled

to immunity from suit under the Eleventh Amendment); *Van Tassel v. Lawrence Cnty. Domestic

Relations Section*, 659 F. Supp. 2d 672, 693-96 (W.D. Pa. 2009), *aff'd*, 390 F. App'x 201 (2010)

(recognizing that Pennsylvania common pleas judges are entitled to Eleventh Amendment

immunity with respect to official capacity claims).   For these reasons, Chamberlain's claims

against Judges Coleman and Ehrlich based on the alleged constitutional violations committed by

the state courts in the course of Chamberlain's state criminal proceeding fail and will be

dismissed with prejudice as legally baseless.[9]  *See Rushing v. Pennsylvania*, 637 F. App'x 55, 56

---

[9] Had Chamberlain raised these claims against these judges in their individual capacity, the
claims would have failed under the doctrine of absolute judicial immunity. *See Stump v.
Sparkman*, 435 U.S. 349, 355-56 (1978); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006)
(*per curiam*).

(3d Cir. 2016) (dismissing appeal as baseless when district court, among other things, dismissed plaintiff's claim against the Commonwealth on grounds of Eleventh Amendment immunity pursuant to §§ 1915(e)(2)(B)(i) and (ii)); *Smith v. Delaware*, 624 F. App'x 788, 791 (3d Cir. 2015) (*per curiam*) (concluding that district court correctly dismissed complaint as frivolous, including on Eleventh Amendment grounds).

### 2.     Official Capacity Claims Against City Officials

As noted above, suing an officer in his or her official capacity is essentially a means of pleading claims against an entity of which the officer is an agent.  *See Graham*, 473 U.S. at 165-66.  Chamberlain has sued various officials and employees of the City of Philadelphia, but he has also named the City as a Defendant.  Accordingly, the Court will dismiss Chamberlain's official capacity claims against all City officials as duplicative of his claims against the City.  *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District."); *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) ("Because Cuvo is suing Palmer Township, the suit against the officers in their official capacities is redundant."); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative.").

### 3.     Claims Against Joseph L. Coleman

Chamberlain's claims against his court-appointed attorney, Joseph Coleman, are based on alleged defects in Coleman's representation during Chamberlain's prosecution in state court. Public defenders do not "act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."  *Polk Cnty. v. Dodson*, 454 U.S.

312, 325 (1981) (footnote omitted); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court.").  Their employing entities, *i.e.*, public defender's offices, have been treated similarly in this context.  *See Dorn v. Aguilar*, 645 F. App'x 114, 115 (3d Cir. 2016) (*per curiam*) ("As explained by the District Court, Dorn did not state a claim for relief against his public defender and the public defender's office because neither is a state actor for purposes of § 1983."); *see also Gannaway v. PrimeCare Med., Inc*, 652 F. App'x 91, 95 (3d Cir. 2016) (*per curiam*) ("We also conclude that the District Court properly granted summary judgment to the defendants on Gannaway's claims against the Berks County Public Defender's Office and the appointed lawyers who represented him in criminal proceedings" (citing *Polk Cty.*)).  Accordingly, the Court will dismiss Chamberlain's § 1983 claims against Attorney Coleman in his individual and official capacities as legally baseless. *See, e.g.*, *Rambert v. Dist. Att'y Philadelphia*, No. 20-1593, 2022 WL 205416, at *1 (3d Cir. Jan. 24, 2022) ("Rambert failed to state a claim against Attorney Epstein because public defenders are not state actors under § 1983 when they 'perform[ ] a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.'" (quoting *Polk Cty.*))

> **4.      Claims Against Officers Bogan, Deveaux, Galazka, and Woertz and Sargent Love (the "Officer Defendants") and ADA Morgan**

The Court understands Chamberlain to be asserting Fourth Amendment claims against the Officer Defendants based on the allegedly illegal search of his home without a warrant or with a deficient warrant, the failure to knock and announce themselves before entering, and the seizure of items from his home.  (Compl. at 40.)  He also brings a Fourth Amendment false arrest claim against Officer Galazka and Fourth Amendment malicious prosecution claims against

Officers Bogan, Deveaux, and Galazka, as well as "D.A. Representative" Morgan.[10]  (Compl. at 15, 26, 40.)

### a.  Illegal Searches, Seizures, Arrest and Failure to Knock and Announce

Chamberlain's primary claims against the Officer Defendants derive from the events of April 22, 2019, the date of his arrest and related search of his home.  The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "Subject to certain exceptions, '[a] search of a house without a warrant issued on probable cause is generally unreasonable.'"  *United States v. Guerrier*, No. 21-1725, 2021 WL 5822394, at *2 (3d Cir. Dec. 6, 2021), *cert. denied,* 142 S. Ct. 1460 (2022) (quoting *United States v. White*, 748 F.3d 507, 511 (3d Cir. 2014)).  The Fourth Amendment also requires police officers to knock and announce their identity and purpose prior to attempting forcible entry, subject to certain exceptions. *Kornegay v. Cottingham*, 120 F.3d 392, 397 (3d Cir. 1997).

---

[10] To the extent Chamberlain brings claims against the Officer Defendants apart from those listed, such claims are dismissed.  Many of those claims appear to be based on the Officer Defendants' testimony at court proceedings for which they are entitled to absolute witness immunity.  *See Briscoe v. LaHue*, 460 U.S. 325, 329-30 (1983); *Williams v. Hepting*, 844 F.2d 138, 141 (3d Cir. 1988); *see also Singleton v. Pittsburgh Bd. of Educ.*, No. 11-1431, 2012 WL 4063174, at *8 (W.D. Pa. Aug. 24, 2012) ("Moreover, if a witness is immune from Section 1983 liability for testifying falsely at a judicial proceeding, the witness will also be immune for conspiring with others to testify falsely." ) (internal citation omitted), *report and recommendation adopted*, No. 11-1431, 2012 WL 4069476 (W.D. Pa. Sept. 15, 2012).  Other claims appear to be faulting the Officer Defendants for how Chamberlain's case proceeded in state court, which would not have been the Officer Defendants' responsibility.  Furthermore, to the extent Chamberlain is alleging violation of his equal protection rights, (*see* Compl. at 40), he has not plausibly alleged that he was treated differently from similarly situated individuals based on his membership in a protected class or for any other reason.  *See Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) ("Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'" (emphasis omitted)).

To state a claim for false arrest and related false imprisonment under the Fourth Amendment, a plaintiff must allege facts establishing that he was arrested without probable cause. *See Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 483. "False arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016)).

Chamberlain alleges that the officers who entered his home either did not have a warrant or had a defective warrant. He also claims that they arrested him without probable cause. Chamberlain's claims in this civil action challenging the April 22, 2019 search of his home, the seizure of evidence, and his related arrest based on a lack of probable cause in violation of the Fourth Amendment, however, are barred by the doctrine of issue preclusion. These issues were previously determined in his criminal case. "Collateral estoppel, also known as issue preclusion, prohibits relitigation of an issue that has been fully and fairly litigated previously." *Karns v. Shanahan*, 879 F.3d 504, 514 n.3 (3d Cir. 2018). To apply collateral estoppel in the context of a prior federal judgment, four elements must be present:

> (1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment.

*In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997); *see also Karns*, 879 F.3d at 514 n.3. Specifically, "[i]ssues determined in criminal proceedings can have preclusive effect in subsequent civil proceedings." *Flood v. Schaefer*, 754 F. App'x 130, 133 (3d Cir. 2018) (*per*

19

*curiam*) (concluding that pretrial ruling in criminal case precluded relitigating the same issue in a civil rights action); *see generally Allen v. McCurry*, 449 U.S. 90, 104 (1980) (holding that collateral estoppel applied where plaintiff raised Fourth Amendment claims asserting issues that were litigated at a suppression hearing in his state criminal proceeding).

Multiple "[f]ederal courts within this Circuit have repeatedly made similar findings" that an individual was estopped from litigating a Fourth Amendment claim where the issue was previously litigated in a prior criminal proceeding. *See Briggs v. Godby*, No. 08-5239, 2009 WL 4756390, at *6 (E.D. Pa. Dec. 10, 2009) (collecting cases as follows: *Crawford v. Frimel*, 337 F. App'x 211, 214 (3d Cir. 2009) (prior determination of probable cause issue during suppression hearing in criminal proceedings barred subsequent civil suit raising the probable cause issue); *Berry v. Chaves*, No. 02-893, 2003 WL 21497557, at *1-2 (E.D. Pa. Jun. 30, 2003) (holding that plaintiff's section 1983 claim that searches of his residence and car were unconstitutional were barred because the constitutionality of those actions were fully considered and upheld during a suppression motion in plaintiff's underlying federal criminal proceedings); *Doswell v. City of Pittsburgh*, No. 07-0761, 2009 WL 1734199, at *6 (W.D. Pa. Jun. 16, 2009) (finding that collateral estoppel barred plaintiff's section 1983 claim for malicious prosecution based on an unduly suggestive photo array where, during his criminal trial, the state court considered and denied a motion to suppress that photo array); *Ashford v. Skiles*, 837 F. Supp. 108, 112 (E.D. Pa. 1993) (holding that a finding of probable cause made in a state court criminal suppression hearing, which afforded the parties a full and fair opportunity to litigate the issue, may be an "appropriate basis" for application of collateral estoppel to a section 1983 claim)).

Upon review of the Complaint and Judge Goldberg's memorandum opinion denying Chamberlain's suppression motion, *see generally Chamberlain*, No. 20-362, 2022 WL 425889,

all the required elements for application of the doctrine of collateral estoppel are met, and Chamberlain is precluded from relitigating the Fourth Amendment issues in this § 1983 action related to the search of his home, the evidence seized, and his arrest.  First, the issue to which preclusion applies, i.e., whether the Officer Defendants' actions were supported by probable cause in accordance with the Fourth Amendment, is the same issued previously litigated in Chamberlain's federal firearms criminal case.  The essence of Chamberlain's Complaint is that his home was searched, evidence was seized, and he was arrested, all without probable cause in violation of the Fourth Amendment.  Judge Goldberg's opinion makes clear that Chamberlain moved to supress the evidence against him in the criminal case (the firearms seized and his statements to police) by challenging the constitutionality the search of his home, the seizure of evidence, and his arrest under the Fourth Amendment, challenging whether the Officers had probable cause.  *See Chamberlain,* 2022 WL 425889, at *2-*12.

Second, the existence of probable cause issue was fully litigated in the federal criminal case where Chamberlain filed a Motion to Suppress Physical Evidence and Statements (ECF No. 19), as well as a supplement (ECF No. 43) to his original motion.  Chamberlain, who was represented by counsel, was the party that raised and fully litigated whether the Officer Defendants lacked probable cause.  Judge Goldberg conducted a hearing on Chamberlain's motion and the supplement thereto on January 6, 2022.  *See id.*, 2022 WL 425889, at *2.  Judge Goldberg considered "all of the evidence set forth in the affidavit" of probable cause and concluded that "the magistrate judge reasonably found probable cause to believe that evidence of drug trafficking would be found inside" Chamberlain's home thus authorizing the search.[11]  *Id.*,

---

[11]  Judge Goldberg described Chamberlain's probable cause argument as "meritless" because "the affidavit identified [Chamberlain] as a suspect in two controlled drug buys, described [Chamberlain]'s keyed entry into the subject property after one of the buys, and indicated that a

at *6.  Moreover, Judge Goldberg explicitly found that "the search warrant and, in turn, the subsequent search and arrest were substantiated by probable cause."  *Id.*, at *12.  Judge Goldberg specifically rejected Chamberlain's contentions that the search warrant contained false and misleading information, including Chamberlain's allegations regarding discrepancies in the property receipts he obtained in discovery, claims that Chamberlain repeats in the Complaint in this case as well.[12]  *Id.*, at *8-*10.   Accordingly, Chamberlain, as the party who challenged the existence of probable cause in the criminal matter, is the party against whom the bar of collateral estoppel now applies.

Third, the determination of probable cause in Chamberlain's criminal case constitutes a valid and final judgment of that issue in this matter.  "[F]or purposes of issue preclusion [a] final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."  *Docteroff*, 133 F.3d at 216 (internal quotations and alterations omitted); *see also In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991) ("Unlike claim preclusion, the effectiveness of issue preclusion, sometimes called collateral estoppel, does not require the entry of a judgment, final in the sense of being appealable.").

---

vehicle registered to [Chamberlain] and used in one of the controlled buys was parked outside of the subject property."  *Id.* at *7.

[12] Chamberlain also asserts that Defendants Chief Inspector Boyle and Inspector Evers initiated a policy or custom whereby Narcotic Bureau's staff could "flip suspects into off-the-books confidential informants," use the off-book informants to conduct controlled buys of drugs, and falsify paperwork to hide the information from prosecutors.  (Compl. at 11-12; *see also id.* at 40.) Chamberlain contends that this policy or custom resulted in a violation of his Fourth Amendment rights in connection with the investigation against him that led to the search of his home and his arrest.  (*Id.* at 11.)  Chamberlain's claims seeking to impose supervisory liability on Boyles and Evers regarding this alleged policy are also barred by the doctrine of issue preclusion because Judge Goldberg determined that the search of his home and his arrest were supported by probable cause.  *Docteroff*, 133 F.3d at 214.

Rather, "[i]t is generally accepted that 'denial of a suppression motion followed by a conviction is a final judgment for collateral estoppel purposes.'"  *Briggs*, 2009 WL 4756390, at *6, n.5 (E.D. Pa. Dec. 10, 2009) (citing *Berry*, 2003 WL 21497557, at *2).  The docket in his criminal matter indicates that Judge Goldberg resolved the probable cause issue by Memorandum and Order entered on February 11, 2022, and that Chamberlain was convicted[13] and then sentenced on February 21, 2023.

Finally, the probable cause determination by Judge Goldberg was essential to the prior judgment in Chamberlain's criminal case.  Chamberlain sought to suppress all physical evidence seized during the search of his house as well his statements he made during his arrest stemming from his assertion that the Officer Defendants lacked probable cause.  Judge Goldberg denied Chamberlain's attempts to suppress both the firearms evidence as well as his own statements, and found that the warrant, the search, the seizure of firearms evidence, and the arrest itself were all "substantiated by probable cause."  *Chamberlain*, 2022 WL 425889 at *12.  Judge Goldberg's determination of the probable cause issue was essential to Chamberlain's criminal judgment because, had Judge Goldberg agreed with Chamberlain that the Officer Defendants lacked probable cause, it appears that most, if not all, of the evidence that formed the factual basis for Chamberlain's guilty plea (*see* ECF No. 101), may have been supressed.  Having had a full and

---

[13]  Chamberlain entered a plea of guilty on November 29, 2022 (Crim No. 20-362, ECF No. 103) which forms the basis for his judgment of conviction in the criminal case.  Both the United States Supreme Court and the United States Court of Appeals for the Third Circuit have recognized that a guilty plea is the functional equivalent of a finding of guilty by a jury or a judge.  *See United States v. Couch*, 291 F.3d 251, 254 (3d Cir. 2002) (recognizing "a plea of guilt is the moment when the defendant declares himself guilty" and is essentially "equivalent to the same declaration made by a judge or jury."); *see also Boykin v. Alabama*, 395 U.S. 238, 242 (1969) ("[A] plea of guilty is more than an admission of conduct; it is a conviction.").  Accordingly, the fact that Chamberlain entered a guilty plea in his criminal matter rather than being found guilty by the jury or a judge does not otherwise impact the finality of the judgment for purposes of issue preclusion.

fair opportunity to challenge the constitutional validity of the Officers' actions under the Fourth

Amendment and litigate the issue to a final judgment, Chamberlain is now collaterally estopped

from relitigating the same constitutional challenges via a § 1983 action because all four elements

have been satisfied in this case.  Accordingly, the Court will dismiss Chamberlain's Fourth

Amendment claims for illegal search, seizure, false arrest, and false imprisonment against the

Officer Defendants for failure to state a claim pursuant to §1915(e)(2)(B)(ii).  The dismissal of

these claims will be with prejudice as it appears that amendment would be futile.  *See Grayson v.*

*Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

### b.    Malicious Prosecution

Chamberlain also brings Fourth Amendment claims for malicious prosecution[14] based on

his prosecution in state court.[15]  A plaintiff asserting a malicious prosecution claim must

establish that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding

ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the

defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5)

the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a

---

[14] Chamberlain also uses the phrase "abuse of process," (Compl. at 41), but his Complaint does
not state an abuse of process claim.  "'[A] section 1983 claim for malicious abuse of process lies
where prosecution is initiated legitimately and thereafter is used for a purpose other than that
intended by the law.'" *Milburn v. City of York*, 612 F. App'x 119, 123 (3d Cir. 2015) (*per
curiam*) (quoting *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989)).  Since Chamberlain
"steadfastly maintain[s] that the criminal action was improper from the start," his claims based
on the state criminal proceeding are malicious prosecution claims rather than abuse of process
claims.  *Id.*

[15]  The Court understands this claim to relate solely to the drug offenses Chamberlain was
originally charged with in Philadelphia Municipal Court in 2019.  *See Chambers v. Bogan*, Civ.
A. No. 19-4131 (E.D. Pa.) (ECF No. 10 at 2) (citing *Commonwealth v. Chambers*, MC-51-CR-
10635-2019 (M.C. Philadelphia)).  Those charges were not adopted by the United States in
Chamberlain's criminal case.

consequence of a legal proceeding." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d

Cir. 2009). "Probable cause exists if there is a fair probability that the person committed the

crime at issue." *Harvard*, 973 F.3d at 199 (internal quotations omitted). "[A] cause of action for

malicious prosecution may be based on the prosecution of more than one charge, and the validity

of the prosecution for each charge comes into question inasmuch as the plaintiff was subject to

prosecution on each individual charge which[] . . . is likely to have placed an additional burden

on the plaintiff." *Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007).

Chamberlain has alleged a plausible claim for purposes of statutory screening for

malicious prosecution with respect to the drug offenses he was originally charged with in

Philadelphia Municipal Court in 2019. With respect to the first element, Chamberlain alleges

that these charges were initiated against him by the Officer Defendants. (*See* Compl. at 15, 17,

25-27, 40.); *see also Chambers v. Bogan*, Civ. A. No. 19-4131 (E.D. Pa.) (ECF No. 10 at 2)

(citing *Commonwealth v. Chambers*, MC-51-CR-10635-2019 (M.C. Philadelphia)). The second

element requires that the criminal proceeding ended in Chamberlain's favor. *See Thompson v.*

*Clark*, 142 S. Ct. 1332, 1335 (2022) ("To demonstrate a favorable termination of a criminal

prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious

prosecution, a plaintiff need only show that his prosecution ended without a conviction.").

Chamberlain has satisfied this element as well. In his Request to Remove Stay Order,

Chamberlain alleges that his state court criminal proceeding "was nolle prosse [sic] on 1-25-21"

(ECF No. 18 at 3) and, as noted, the charges were not adopted by the United States. As to the

third and fourth elements, Chamberlain also alleges that these "false" charges were instituted

without probable cause[16] for a purpose other than bringing Chamberlain to justice.[17]  (*See*

Compl. at 15, 17, 25-31.)  Chamberlain also sufficiently alleges that he suffered a deprivation of

liberty consistent with the concept of seizure pointing to his continued detention after his

arraignment.  (*Id.* at 15-17.)  Accordingly, the Court will direct service of Chamberlain's

malicious prosecution claim at this time on Officers Bogan, Deveaux, and Galazka, as well as

"D.A. Representative" Morgan.

### 5. Claims Against the City

Chamberlain attributes much of the conduct alleged in his Complaint to failures of the

City.  He clarifies three claims against the City in connection with the search of his home, his

arrest, and his prosecution, as follows:

1) "Failure to properly train police Narcotic Bureau Staff members."

2) "Failure to properly supervise and allowing the illegal/unconstitutional policies, customs and practices of Chief Inspector Anthony Boyle and Inspector Raymond Evers."

3) "The long time practices of the judicial system in which allowed the practice and customs in which continuously violates the due process and equal protection clauses and court access protection."

---

[16] Whether sufficient probable cause to institute the proceedings and bring the state law drugs against Chamberlain is not an issue that was addressed by Judge Goldberg in Chamberlain's federal criminal proceeding.  Judge Goldberg's finding that sufficient probable cause existed was specific to the search of Chamberlain's home, the seizure of the physical evidence, and Chamberlain's arrest incident thereto.  Thus, while Chamberlain is estopped from relitigating the probable cause issue with respect to the search, seizure, false arrest, and false imprisonment claims, he is not estopped from litigating that issue with respect to the malicious prosecution claims on the state law drug charges.

[17]  The Court understands Chamberlain to allege that the Officer Defendants' purpose may have stemmed, at least in part, from an attempt to cover up improper procedures regarding the existence or use of confidential informants by the Narcotics Bureau.  (*See* Compl. at 25-31.)

(Compl. at 39.)[18]

To the extent Chamberlain brings claims against the City for alleged failures that occurred in his Pennsylvania state court judicial proceeding, his claims appear to be premised upon a mistaken belief that the City, rather than the Commonwealth, is responsible for these courts. Since there is no basis for holding the City liable based on the operation of courts within the Commonwealth's unified judicial system, Chamberlain's third claim against the City is dismissed. *See Scheib v. Pennsylvania*, 612 F. App'x 56, 59 (3d Cir. 2015) (*per curiam*) ("It appears that [plaintiff] named the County as a defendant because she mistakenly believes that the Allegheny County Court of Common Pleas is a County entity. As the District Court correctly noted, however, the court is a Commonwealth—not County—entity. . . . Therefore, [plaintiff's] claims against the Court of Common Pleas are . . . barred by the Eleventh Amendment."); *Perez v. Borough of Berwick*, 507 F. App'x 186, 190 (3d Cir. 2012) (upholding the district court's finding that the Columbia County Probation and Parole Department was "'not part of Columbia County,' but rather 'an agency of the Commonwealth'" of Pennsylvania and recognizing that the fact "that Pennsylvania probation and parole departments are legally part of the Commonwealth's Unified Judicial District" remained true even where a probation officer testified that she "'work[ed] for Columbia County as a probation/parole officer'" and where the second amended complaint named Columbia County as a defendant and inaccurately alleged that the County "operated the . . . Probation Department").

The remaining two claims against the City are based on permitting the unlawful policies of Defendants Boyle and Evers by failing to supervise them and a failure to train members of the

---

[18] The fourth, and final, ground for a claim against the City concerns the conditions at City prisons during the pandemic. (Compl. at 39.) This claim will be severed from the remaining claims in this case in accordance with § III.A. of this Memorandum.

Narcotics Bureau.  To plead a basis for liability against a municipal entity such as the City of

Philadelphia under § 1983, a plaintiff must allege that the municipality's policy or custom caused

the violation of his constitutional rights.  *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S.

658, 694 (1978).  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly

that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

"'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy

with respect to the action issues an official proclamation, policy, or edict.'"  *Estate of Roman v.*

*City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895

F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a

given course of conduct, although not specifically endorsed or authorized by law, is so well-

settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915

F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, a plaintiff

must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed

to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's]

injury."  *Id.* (internal quotations and alterations omitted).  Allegations that simply paraphrase the

standard for municipal liability, are too vague and generalized to support a plausible claim.  *See,*

*e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021)

("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is

insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

    A plaintiff may also state a basis for municipal liability by "alleging failure-to-

supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to

deliberate indifference to the constitutional rights of those affected."  *Forrest v. Parry*, 930 F.3d

93, 106 (3d Cir. 2019).  "This consists of a showing as to whether (1) municipal policymakers

know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* "Ordinarily, this requires a plaintiff to identify a pattern of similar constitutional violations by untrained employees that puts municipal decisionmakers on notice that a new program is necessary." *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (internal quotations and alterations omitted). "Otherwise, the plaintiff needs to show that failure to provide the identified training would likely result in the violation of constitutional rights — i.e., to show that the need for more or different training was so obvious." *Id.* (internal quotations and alterations omitted).

Chamberlain claims that the City failed to properly supervise the activities of Boyle and Evers by permitting them to adopt a policy or custom of using off-the-books confidential informants and falsifying paperwork to cover it up, which resulted in a violation of Chamberlain's constitutional rights during the investigation and the search of his home. Chamberlain does not allege that either Boyle or Evers were policy makers.[19]  Rather, Chamberlain alleges that they initiated a policy or custom in their unit that the City essentially knew of and acquiesced in.  Chamberlain alleges that the practice "was first brought to the City's attention in May of 2017" when an internal affairs investigation revealed that Boyle announced this policy in a meeting held by Evers.  (Compl. at 11.)  Chamberlain also alleges that several of the members of the Narcotics Bureau had been federally indicted, officers of the Narcotics Bureau had filed lawsuits raising concerns about "illegal tactics," and "a multitude of

---

[19] *Brennan v. Norton*, 350 F.3d 399, 428 (3d Cir. 2003) ("[I]f a municipal employee's decision is subject to review, even discretionary review, it is not final and that employee is therefore not a policymaker for purposes of imposing municipal liability under § 1983.").

substantiated complaints [had been filed] against many police officers in the narcotics squads."
(*Id*. at 12-13.)

The Court understands Chamberlain to be asserting as a municipal custom of the City which resulted in the City turning a blind eye to improper police tactics, resulting in a violation of Chamberlain's constitutional rights during the search of his home and his arrest.  Here again, Judge Goldberg's finding that probable cause existed for the search of his home and his arrest represents a final judgment that Chamberlain's Fourth Amendment rights were not violated, and without an underlying constitutional violation, there is no basis for a *Monell* claim against the City on these facts.  *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.") (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if a municipal employee "inflicted no constitutional injury . . . , it is inconceivable that [the municipality] could be liable")).  For similar reasons, this lack of an underlying constitutional violation is also fatal to Chamberlain's claim that the City failed to properly train members of the Narcotics Bureau as there can be no derivative municipal claim absent such a violation.  *Id.*  Accordingly, Chamberlain's claims against the City will be dismissed with prejudice for failure to state a claim pursuant to § 1915(e)(2)(B)(ii).  It further appears that any attempt to amend these claims would be futile.

### 6.    Claims Against ADA Mazmanian

Chamberlain brings claims against ADA Mazmanian in his official capacity only, which are essentially claims against the District Attorney's Office.  (Compl. at 6.)  These claims appear to be based on allegations that Chamberlain wrote to the District Attorney's Office about the alleged problems in his case and/or that the District Attorney's Office should have been aware of

the defects in his criminal proceeding due to motions he filed therein.  (*Id.* at 29.)  However, the District Attorney's Office is not a "person" subject to liability under § 1983.  *See Reitz v. Cnty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) ("[T]he Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability."); *see also Briggs v. Moore*, 251 F. App'x 77, 79 (3d Cir. 2007) (*per curiam*) ("[T]he Monmouth County Prosecutor's Office is not a separate entity that can be sued under § 1983.").  *But see Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d 694, 711-12 (E.D. Pa. 2015) ("[T]he Court concludes that neither § 16257 nor *Reitz* bars suit against the D.A.'s Office under the circumstances of this case.").  In any event, Chamberlain's allegations do not establish a plausible basis for municipal liability based on a municipal policy or custom or municipal deliberate indifference.  *See Connick v. Thompson*, 563 U.S. 51, 66 (2011) (in the context of a claim based on *Brady* violations at the district attorney's office, concluding that "recurring constitutional violations are not the 'obvious consequence' of failing to provide prosecutors with formal in-house training about how to obey the law").  The Court will therefore dismiss the claims against Defendant Mazmanian.

## V.   CONCLUSION

For the foregoing reasons, the Court will sever Chamberlain's claims based on the conditions in the Philadelphia Prison System.  All remaining claims will be dismissed with prejudice, except Chamberlain's claim for malicious prosecution which will proceed to service upon Defendants Bogan, Deveaux, Galazka, and Morgan only.  An appropriate Order follows.

BY THE COURT:


/s/ Jeffrey L. Schmehl
**JEFFREY L. SCHMEHL, J.**